**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEBBIE WALTERS AND<br>MAX WALTERS,<br><br>    Plaintiffs,<br><br>v.<br><br>THE PEOPLE'S REPUBLIC<br>OF CHINA,<br><br>    Defendant. | Case No. 1:01-mc-300 (JDB/DAR) |

### STATEMENT OF INTEREST OF THE UNITED STATES

Pursuant to 28 U.S.C. § 517,[1] the United States respectfully submits this Statement of Interest, addressing several important international and domestic legal issues implicated by this case. Specifically, the Statement of Interest sets forth the United States' views on certain service of process issues and on the breadth of the Court's recent discovery Order (ECF No. 8).

Plaintiffs here, Debbie and Max Walters, are seeking to execute on a $9.8 million default judgment entered against the People's Republic of China. The United States does not condone the non-payment of money judgments entered by United States courts. But the present case raises broader issues relating to the interpretation of applicable international law and the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611. The United States has a strong interest in the proper application of these laws to foreign states. Accordingly, the United States files this Statement

---

[1] Section 517 provides that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

-1-

of Interest, in support of neither party, seeking to inform the Court of the Government's views on these important international and domestic legal issues.

**BACKGROUND**

In 1996, Plaintiffs Debbie and Max Walters obtained a $9.8 million default judgment against China, entered by the United States District Court for the Western District of Missouri. *See Walters et al. v. Century International Arms, Inc. et al.*, Case No. 3:93-cv-5118 (W.D. Mo.). The default judgment arises from an incident in which Plaintiffs' son was killed by a rifle that was manufactured in China. Since 1996, Plaintiffs have been trying unsuccessfully to collect on the judgment.[2]

In 2001, Plaintiffs registered their default judgment in this Court. *See* ECF Nos. 1-2. Plaintiffs took no further action in this Court until April 2010, when they issued Interrogatories, Requests for Production of Documents, and a Notice of Deposition to China. The discovery requests sought, among other information, extensive details about China's assets located within the United States. After China failed to respond to the discovery requests, Plaintiffs filed a Motion for Judgment Debtor Examination Or, Alternatively, For Order Requiring Payment of Outstanding Judgment. *See* ECF No. 4.

On March 6, 2012, after holding a hearing on Plaintiffs' motion, the Court issued an Order granting Plaintiffs' motion for judgment debtor examination, and denying without prejudice the alternative motion for an order requiring payment of the outstanding judgment. *See* ECF No. 8. The Court's Order required China to provide to Plaintiffs, no later than April 16, 2012, an extensive list of documents relating to China's commercial assets within the United States. *Id.* at 1, 3-5. The

---

[2] Those efforts included an attempt to seize Chinese assets held by certain banks in New York, which culminated in an unsuccessful appeal to the Second Circuit. *See Walters v. Indus. & Commercial Bank of China*, 651 F.3d 280 (2d Cir. 2011).

Court also ordered China, "under penalty of contempt of Court, to appear before this Court on Thursday, April 26, 2012 at 9:30 a.m. to be examined by a United States Magistrate Judge on matters pertaining to payment of the Final Judgment" in this case. *Id.* at 1. Finally, the Court ordered Plaintiffs' counsel to serve the Order, via Federal Express and International First-Class U.S. Mail, upon China's Ambassador at the Chinese Embassy in the District of Columbia and China's Ministry of Justice in Beijing. *Id.* at 2.

Because the United States has an interest in the proper service of process on foreign states and the scope of discovery orders issued against foreign states, the United States now files this Statement of Interest.

## DISCUSSION

**I.     Service of Process Issues.**

Under the Court's discovery Order, Plaintiffs' counsel was directed to serve the Order upon China's Ambassador at the Chinese Embassy in the District of Columbia. *See* ECF No. 8 at 2. Pursuant to an applicable treaty, however, service of legal papers upon ambassadors or embassies is improper.

The Vienna Convention on Diplomatic Relations ("VCDR"), done at Vienna on Apr. 18, 1961, 23 U.S.T. 3227, T.I.A.S. 7502 (entered into force with respect to the United States Dec. 13, 1972)—to which the United States and China are both parties—provides that "[t]he premises of the mission shall be inviolable." *See* Art. 22(1). A court order requiring service of legal documents upon an embassy conflicts with Article 22(1) of the VCDR. *See, e.g., Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 748 (7th Cir. 2007) ("[S]ervice through an embassy is expressly banned both by an international treaty to which the United States is a party and by U.S.

statutory law. The Vienna Convention on Diplomatic Relations . . . prohibits service on a diplomatic officer.").

Moreover, Article 29 of the VCDR provides that "[t]he person of a diplomatic agent shall be inviolable." Likewise, then, a court order requiring service upon an ambassador as the agent of the government conflicts with the VCDR. *See, e.g.*, *Tachiona v. United States*, 386 F.3d 205, 222 (2d Cir. 2004) ("[C]ourts have held that the inviolability principle precludes service of process on a diplomat as agent of a foreign government[.]"). In light of the VCDR, courts should refrain from ordering—and parties should not be encouraged to effect—service of legal papers upon ambassadors or embassies.[3]

More generally, the United States also has a reciprocal interest in ensuring that foreign states have sufficient notice and an adequate opportunity to respond to any post-judgment execution proceedings initiated against them. Such treatment encourages other nations to treat the United States similarly within their judicial systems.

Here, the United States notes that Plaintiffs' underlying motion for judgment debtor examination, according to the certificate of service, was also served on the Ambassador at the Chinese Embassy in the District of Columbia. The problems raised by that improper notice are compounded by the relatively short deadlines provided for compliance with the Court's extensive discovery Order. The United States suggests that the Court, as a matter of prudence and comity, consider the issue of adequate notice and opportunity to respond when determining how to proceed in this case, particularly in light of the United States' reciprocal interest in receiving fair treatment

---

[3] The United States takes no position in this Statement of Interest on whether service on the Ministry of Justice in Beijing would comply with federal law or any applicable international conventions.

in foreign proceedings. *Cf. FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 447 F.3d 835, 838 (D.C. Cir. 2006) (stressing "a foreign sovereign's interest—and our interest in protecting that interest—in being able to assert defenses based on its sovereign status").

## II.   Breadth of the Court's Discovery Order.

The Court's discovery Order requires China to provide Plaintiffs with information on what appears to be every commercial asset owned directly or indirectly by the Chinese government that is located within the United States. This type of broad, general-asset discovery is inconsistent with the FSIA, under which "discovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992).

In a typical case, a plaintiff seeking to execute on a judgment is able to invoke broad discovery procedures to aid in the process. *See* Fed. R. Civ. P. 69(a)(2) ("In aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules[.]"). Under the FSIA, however, there is a presumption that property of a foreign state is immune from attachment and execution. *See* 28 U.S.C. § 1609. To overcome this presumption of immunity, a plaintiff must establish that one of the exceptions set forth in 28 U.S.C. § 1610 applies to a specific piece of property.

As the Seventh Circuit recently observed, broad-ranging discovery is inconsistent with the presumptive immunity afforded to foreign states' property: "Discovery orders that are broad in scope and thin in foundation unjustifiably subject foreign states to unwarranted litigation costs and intrusive inquiries about their American-based assets. One of the purposes of the immunity codified in § 1609 is to shield foreign states from these burdens." *Rubin v. Islamic Republic of Iran*, 637 F.3d

783, 796-97 (7th Cir. 2011). In addition to the Seventh Circuit, three other Courts of Appeals have indicated that post-judgment discovery against foreign states necessarily must be limited. *See Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1095-96 (9th Cir. 2007); *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007); *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 260 n.10 (5th Cir. 2002).

Here, the Court's discovery Order is broad and far-reaching. In particular, the Court's Order requires China to provide to Plaintiffs (among other items):

- "All documents identifying property, including money, in the United States currently owned by the PRC that is or at any time was used by the PRC for a commercial activity in the United States."

- "All documents identifying property, including money, of every PRC agency and instrumentality engaged in commercial activity in the United States."

- "All documents, including bank statements, identifying Bank Accounts and Financial Accounts in the United States currently directly or indirectly controlled by the PRC containing money or other property owned by the PRC for a commercial activity in the United States."

- "All documents identifying commercial activities carried on in the United States by the PRC."

- "All documents pertaining to organizations and businesses owned and/or controlled by the PRC in the United States."

*See* ECF No. 8, Exh. A at ¶¶ 4, 6, 11, 12, 13.

This type of general-asset discovery is inconsistent with the narrow and circumspect discovery permitted against foreign states. Plaintiffs have not identified any specific property alleged not to be immune; Plaintiffs are instead seeking a list of what appears to be every Chinese commercial asset located within the United States.

Such broad discovery orders, in addition to being inconsistent with the presumptive immunity accorded by the FSIA, potentially harm the United States by encouraging foreign courts to allow similarly overbroad discovery against the United States.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court consider the issues set forth above in these proceedings relating to Plaintiffs' Motion for Judgment Debtor Examination.

Dated: April 25, 2012

Respectfully Submitted,

STUART F. DELERY
Acting Assistant Attorney General

VINCENT M. GARVEY
Deputy Branch Director

Of Counsel:

/s/   Daniel Schwei
DANIEL SCHWEI
Phillip Riblett
Trial Attorney (N.Y. Bar)
Attorney-Adviser
United States Department of Justice
Office of the Legal Adviser
Civil Division, Federal Programs Branch
United States Department of State
20 Massachusetts Ave. NW
Washington, DC  20530
Tel.:     (202) 305-8693
Fax:     (202) 616-8470
Email:   daniel.s.schwei@usdoj.gov

*Attorneys for the United States*

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 25, 2012, a copy of the foregoing document was served upon counsel of record by electronic means through electronic filing:

Charles Henry Camp , Sr.
LAW OFFICES OF CHARLES H. CAMP, P.C.
1319 18th Street, NW
Washington, DC 20036
Attorney for Plaintiffs

/s/   Daniel Schwei
DANIEL SCHWEI
Trial Attorney (N.Y. Bar)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
Tel.:      (202) 305-8693
Fax:      (202) 616-8470
Email:    daniel.s.schwei@usdoj.gov