# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBBIE WALTERS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PEOPLE'S REPUBLIC OF CHINA,<br><br>Defendant. | Miscellaneous No. 01-300<br>JDB/DAR |

## MEMORANDUM ORDER

Plaintiffs Debbie Walters and Max Walters initiated this miscellaneous action requesting a judgment debtor examination of Defendant, the People's Republic of China, in order to identify assets within the United States to satisfy an outstanding judgment that Plaintiffs secured against Defendant in a civil action brought pursuant to the Foreign Sovereign Immunities Act ("FSIA") in the United States District Court for the Western District of Missouri. *See* Motion for Judgment Debtor Examination or, Alternatively, for Order Requiring Payment of Outstanding Judgment (Document No. 4). This action was referred to the undersigned United States Magistrate Judge to "consider this matter in its entirety." Order (Document No. 6) at 2.

In an Order (Document No. 24) filed on February 14, 2014, this court directed Defendant to "produce [certain] requested documents to counsel for Plaintiffs by no later than April 15, 2014" and to appear before the court for a judgment debtor examination on May 6, 2014.[1] At the

---

[1] After this court had entered its order, the Supreme Court issued a decision in which it considered whether the FSIA "limits the scope of discovery available to a judgment creditor in a federal postjudgment execution proceeding against a foreign sovereign." *Republic of Arg. v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2253 (2014). In an effort to locate assets to satisfy unpaid judgments against the Republic of Argentina, NML Capital, Ltd. served

May 6, 2014 hearing, counsel for Plaintiffs indicated that they served the court's order and Plaintiffs' request for production of documents on Defendant, *see* Plaintiffs' Exhibit 1, and that they received confirmation that it was delivered, *see* Plaintiffs' Exhibit 2.  Defendant did not produce the requested documents, *see* Notice (Document No. 25), and did not appear for the May 6, 2014 hearing.  Plaintiffs thus renewed their request that the court find Defendant in contempt, which the court previously stayed pending the scheduled judgment debtor examination.  *See* Order at 3.

The court first notes that Plaintiffs' previous requests for a finding of civil contempt were predicated on Defendant's noncompliance with an Order (Document No. 8) filed by the court on March 6, 2012.[2]  Shortly after entering the order, however, the court vacated it, *see* 04/26/2012 Minute Order, and it is thus not a proper basis upon which to request a finding of contempt.[3]

---

subpoenas on "two nonparty banks" seeking "information about Argentina's worldwide assets generally, so that [it could] identify where Argentina may be holding property that *is* subject to execution." *Id.* at 2253, 2258.  The Court affirmed the judgment of the Second Circuit, which held that "'because the [district court's] Discovery Order involves discovery, not attachment of sovereign property, and because it is directed at third-party banks, not at Argentina itself, Argentina's sovereign immunity is not infringed.'" *Id.* at 2254, 2258 (citation omitted).  The Court analyzed the text of the FSIA, and determined that "[t]here is no [immunity] provision forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets." *Id.* at 2256.

[2] *See* Plaintiffs/Judgment Creditors Debbie Walters and Max Walters' Response to Statement of Interest of the United States (Document No. 11) at 15 ("[T]he Walters[] respectfully urge the Court to rescind its vacation of its March 6, 2012, Order and find that the PRC was in contempt for failing to comply with the Court's Order."); Plaintiffs/Judgment Creditors Debbie Walters and Max Walters' Notice of New Relevant Authority Pertaining to Entry of Order of Contempt Against the People's Republic of China (Document No. 13) at 1-2 ("[T]he Walters continue to respectfully urge the Court to rescind its vacation of its March 6, 2012, Order and find Defendant/Judgment Debtor The People's Republic of China in contempt for failing to comply with the Court's March 6, 2012 Order."); Plaintiffs/Judgment Creditors Debbie Walters and Max Walters' Second Notice of New Relevant Authority Pertaining to Entry of Order of Contempt Against the People's Republic of China (Document No. 15) at 3 ("[T]he daily contempt penalty imposed upon China for failing to comply with the Court's March 6, 2012, Order . . . should be significantly greater than US$50,000 per day . . . ."); Plaintiffs/Judgment Creditors Debbie Walters and Max Walters' Supplemental Memorandum of Points and Authorities With Respect to Permissible Scope of Discovery Against the PRC (Document No. 22) at 13; Proposed Order for Contempt Against the People's Republic of China (Document No. 22-1).

[3] *See* Second Supplement to the United States' Statement of Interest (Document No. 16) at 2; Notice of the United States Regarding Scheduled Hearing (Document No. 23) at 2.

Accordingly, the court will limit its consideration to Plaintiffs' request, stated on the record at the May 6, 2014 hearing, that the court find Defendant in contempt for failure to comply with the court's February 14, 2014 order.

Plaintiffs request that the court, pursuant to its inherent authority, find Defendant in civil contempt for its failure to comply with the court's February 14, 2014 order – more specifically, for failing to produce the requested documents and for failing to appear for the judgment debtor examination, as ordered. Plaintiffs request sanctions in the amount of "$246,500 per day until the PRC satisfies its discovery obligations . . . or the Final Judgment has been paid in full." *See* Proposed Order (Document No. 22-1) at 3. In support of their request, Plaintiffs rely on *Chabad v. Russian Federation*, 915 F. Supp. 2d 148 (D.D.C. 2013) and the CIA World Factbook's assessment of Defendant's economy. *See* Plaintiffs/Judgment Creditors Debbie Walters and Max Walters' Second Notice of New Relevant Authority Pertaining to Entry of Order of Contempt Against the People's Republic of China (Document No. 15) at 2 n.1, 3.

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt," and may do so when a party "has violated an order that is clear and unambiguous," and the violation is proved by "clear and convincing evidence." *Armstrong v. Exec. Office of the President, Office of Admin.*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (citations omitted) (quoting other sources) (internal quotation marks omitted); *see also Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Artharee*, No. 12-1233, 2014 WL 2580660, at *2 (D.D.C. June 10, 2014) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F. Supp. 2d 35, 38 (D.D.C. 2010)) ("[A] party moving for civil contempt must show, 'by clear and convincing evidence, that: (1) there was a court order in

place; (2) the order required certain conduct by the defendant; and (3) the defendant failed to comply with that order.'"); *Chabad*, 915 F. Supp. 2d at 151.

"Civil contempt, unlike the punitive remedy of criminal contempt, is designed to coerce compliance with a court order or to compensate a complainant for losses sustained." *Chabad v. Russian Fed'n*, 798 F. Supp. 2d 260, 272 (D.D.C. 2011) (citation omitted) (quoting another source) (internal quotation marks omitted); *see also United States v. Latney's Funeral Home, Inc.*, No. 11-2096, 2014 WL 1826732, at *3 (D.D.C. May 8, 2014) (citation omitted) (quoting another source) (internal quotation marks omitted) ("A civil contempt action is characterized as remedial in nature, used to obtain compliance with a court order or to compensate for damages sustained as a result from noncompliance."). Thus, while the court has "broad" discretion in constructing civil contempt sanctions, the court's exercise of its discretion is guided by these goals. *See, e.g.*, *Latney's Funeral Home*, 2014 WL 1826732, at *9 (citations omitted) ("Federal courts have broad equitable powers to craft remedial sanctions for civil contempt . . . . A court's goal is to fashion a remedy that will coerce the contemnor into compliance, compensate the complainant for losses due to the noncompliance, or both.").

This Circuit has addressed the imposition of civil contempt sanctions on a foreign sovereign in an action brought pursuant to the FSIA. *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 F.3d 373, 375 (D.C. Cir. 2011). In that case, the plaintiff, seeking to execute on judgments it obtained against the Democratic Republic of Congo, served discovery requests in order "to identify the DRC's commercial property in the United States available for execution." *Id.* at 376. The district court entered a discovery order, with the consent of the parties, but the Democratic Republic of Congo did not produce all of the

documents in accordance with the court's order. *Id.*; *see also FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 603 F. Supp. 2d 1 (D.D.C. 2009). The district court found the Democratic Republic of Congo in civil contempt, ordered it to certify its compliance with the court's discovery orders within thirty days, and ordered it to "show cause on or before the expiration of the 30–day period why a fine payable to plaintiff should not be imposed in the amount of $5000 per week, doubling every four weeks until reaching a maximum of $80,000 per week, until DRC satisfies its discovery obligations under this Order." *FG Hemisphere Assocs.*, 603 F. Supp. 2d at 2-3.

The district court denied the Democratic Republic of Congo's motion to vacate the contempt order, and the Circuit affirmed the district court's order, after determining that "contempt sanctions against a foreign sovereign are available under the FSIA." *FG Hemisphere Assocs.*, 637 F.3d at 376, 379; *see also id.* at 380 ("We hold today only that the FSIA does not abrogate a court's inherent power to impose contempt sanctions on a foreign sovereign, and that the district court did not abuse its discretion in doing so here."). In so concluding, the Court distinguished between a court's power to "impose" sanctions and the court's power to "enforce" the sanctions imposed. *Id.* at 377.

More recently, another member of this court imposed civil contempt sanctions, in the amount of $50,000 per each day of noncompliance, against a foreign sovereign – the Russian Federation – and other Russian entities, for their failure to comply with the court's final order with respect to the merits of the case. *Chabad*, 915 F. Supp. 2d at 150, 154-55. The court concluded that it had authority to issue contempt sanctions under *FG Hemisphere Associates*, and found that sanctions were appropriate under the "general principles . . . governing the issuance of

civil contempt sanctions . . . ." *Id.* at 153. The court also reiterated the distinction between "a court's *issuing* of contempt sanctions with *execution* or *enforcement* of an award . . . ." *Id.* at 154; *see also id.* at 152.

Here, Plaintiffs have shown, by clear and convincing evidence, that Defendant has failed to comply with the court's February 14, 2014 order. Plaintiffs submitted evidence that Defendant was served. *See* Plaintiffs' Exhibit 1; Plaintiffs' Exhibit 2. The order clearly and unambiguously directed Defendant to "produce the requested documents to counsel for Plaintiffs by no later than April 15, 2014" and to "appear before the undersigned in Courtroom 4 of the United States District Court for the District of Columbia on Tuesday, May 6, 2014 at 10:00 a.m., for a judgment debtor examination." Order (Document No. 24) at 3. Defendant did not appear for the May 6, 2014 judgment debtor examination, and counsel for Plaintiffs represented, on the record at the May 6, 2014 hearing, that Defendant has not produced the documents. Defendant itself has indicated that it will not comply with the court's order because "execution of the request would infringe the sovereignty or security of the People's Republic of China []." Notice (Document No. 25).

Accordingly, the undersigned finds that Plaintiffs have established a basis for the court, in an exercise of its inherent power, to find Defendant in civil contempt of the court. The undersigned further finds that civil contempt sanctions against Defendant are authorized in this Circuit, pursuant to *FG Hemisphere Associates*. However, before imposing such sanctions, the court will first order Defendant to show cause why it should not be subject to civil contempt sanctions. The court in *Chabad* entered a show cause order prior to its issuance of civil contempt sanctions, noting that it "must remain cognizant that a fundamental requirement of civil contempt

proceedings 'is that the accused party has notice and an opportunity to be heard.'" *Chabad*, 798 F. Supp. 2d at 273 (citation omitted); *see also id.* at 274 ("[D]efendants' ongoing failure to comply with the Court's order . . . cannot eliminate the requirement that they be given notice and an opportunity to respond before entry of civil contempt."); *cf. FG Hemisphere Assocs.*, 603 F. Supp. 2d at 3 (including a show cause provision in the contempt order).

While Plaintiffs' previous requests for sanctions, *see supra* note 2, may have alerted Defendant to the possibility that sanctions could be imposed, Defendant, to the undersigned's knowledge, has not been notified of Plaintiffs' present request for sanctions, which was made orally on the record at the May 6 hearing at which Defendant was not present. Moreover, unlike the circumstances presented in the cases discussed above, Defendant has never appeared or participated in the instant litigation. *See* Notice (Document No. 10); *cf. Chabad*, 798 F. Supp. 2d at 264 ("Following nearly four years of active litigation between the parties, all defendants withdrew from this matter, explaining that '[t]he Russian Federation views any continued defense before this Court and, indeed, any participation in this litigation as fundamentally incompatible with its rights as a sovereign nation.'"); *FG Hemisphere Assocs.*, 637 F.3d at 375-76 (noting that the "DRC began participating in the litigation" and that the district court entered a discovery order "with the consent of both parties"). The need for notice is arguably greater where, as here, the party subject to sanctions has never appeared in the litigation.

Defendant's notices to the court reflect that it does not intend to participate in the litigation, or comply with orders of the court. *See* Notice (Document No. 10); Notice (Document No. 25); *see also Chabad*, 798 F. Supp. 2d at 273 ("[D]efendants' prior statement that they view 'any continued defense before this Court and, indeed, any participation in this litigation as

fundamentally incompatible with [their] rights as a sovereign state,' . . . along with their letter—sent after receipt of the default judgment—returning documents 'without judicial review,' . . . make clear that they have no intention of complying with the Court's prior order."). Nonetheless, the undersigned finds it prudent to provide Defendant with notice of Plaintiffs' request for sanctions, an opportunity to come into compliance with the court's order prior to the issuance of sanctions, and an opportunity to be heard.

**CONCLUSION**

For all of the foregoing reasons, it is, this 27th day of October, 2014,

**ORDERED** that by no later than December 31, 2014, Defendant shall produce the documents requested by Plaintiffs in accordance with the court's February 14, 2014 order; and it is

**FURTHER ORDERED** that in the event Defendant fails to comply, it shall **SHOW CAUSE** by no later than January 7, 2015 why the court should not impose the civil contempt sanctions requested by Plaintiffs – $246,500 per day – for its failure to comply with the court's February 14, 2014 order directing it to produce the documents requested by Plaintiffs and to appear for a judgment debtor examination; and it is

**FURTHER ORDERED** that counsel for Plaintiffs shall serve a copy of this order upon Defendant in accordance with applicable federal law and international agreements.

                                                              /s/
                                                              DEBORAH A. ROBINSON
                                                              United States Magistrate Judge